657 So.2d 161 (1995)
Jeanne F. FREYOU, Plaintiff-Appellant,
v.
IBERIA PARISH SCHOOL BOARD, Defendant-Appellee.
No. 94-1371.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1995.
*162 Daniel M. Landry, III, Lafayette, for Jeanne F. Freyou.
Justin Wayne Landry, New Iberia, for Iberia Parish School Bd.
Richard Barry Nevils, Baton Rouge, for Intern. Indem. Co.
Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
WOODARD, Judge.
This appeal arises from an action for trespass based on the discharge of sewage onto neighboring land.

FACTS
On September 24, 1985, equipment failure at the Coteau Elementary School sewage treatment facility, owned and operated by defendant, Iberia Parish School Board, caused the release of untreated sewage into the facility's discharge line, a drainage channel that crosses property owned by plaintiff, Jeanne Freyou. Ms. Freyou filed suit against the School Board on December 4, 1985, alleging that the discharge constituted a trespass upon her property. She sought damages and injunctive relief, proscribing the School Board from releasing sewage into the ditch.
On December 19, 1985, the School Board agreed to reroute the discharge line from the channel crossing Ms. Freyou's property to a public drainage channel along Louisiana Highway 88, which fronts plaintiff's and defendant's properties. Nevertheless, Ms. Freyou maintained her suit for damages for the initial trespass. On December 20, 1985, the district court enjoined the School Board from discharging sewage, not in conformity with Department of Environmental Quality (DEQ) regulations, onto Ms. Freyou's property.
The School Board rerouted the sewage effluent as agreed and installed concrete jars under Ms. Freyou's property along the Highway 88 channel to facilitate subsurface drainage. The relocation of the discharge line was approved and properly permitted under the applicable DEQ, Department of Transportation and Development (DOTD), and Department of Health and Hospitals (DHH) regulations. However, Ms. Freyou believed that the effluent flowed from this ditch back into the original drainage channel on her property. She, therefore, amended her petition to allege an ongoing trespass. She sought and received preliminary injunctions forbidding *163 the discharge of untreated effluent onto her property.
At trial on the merits on February 4, 1994, the trial court awarded Ms. Freyou damages of $300.00 as a result of the initial overflow but denied her request for injunctive relief, finding that the trespass had not recurred. Ms. Freyou now appeals, urging that the trial court erred in failing to find that a continuing trespass had occurred, awarding insufficient damages and failing to award injunctive relief.

LAW

I. CONTINUING TRESPASS
The School Board has not contested the trial court's finding that the initial discharge of untreated sewage on September 24, 1985 constituted a trespass upon Ms. Freyou's property. Thus, we address only the issue of continued trespass claimed by Ms. Freyou.
A court of appeal may set aside a finding of fact only if it is manifestly erroneous. Stobart v. State, 617 So.2d 880 (La. 1993). A finding is manifestly erroneous if it has no reasonable basis in the record viewed in its entirety. Id. Thus, a factfinder's choice between two permissible interpretations of the evidence cannot be manifestly erroneous. Id.
Ms. Freyou testified that "pure raw sewage" continues to back up onto her property from the drainage channel and that it remains there until rain washes it away. Her husband confirmed this testimony, adding that the effluent "don't smell too good." He testified that he visited the property on the day before the hearing and that the property had smelled "a little bit" at that time.
Simon Freyou, a consulting civil engineer and land surveyor who is apparently unrelated to the plaintiff, testified that the effluent discharged into the ditch along Highway 88 does not flow back onto Ms. Freyou's property but rather continues to flow along Highway 88 away from Ms. Freyou's property. He also noted that the discharge was treated effluent rather than raw sewage. He admitted that he had not been on the property for 2-3 years but stated that the effluent would not accumulate in the area because rain would wash it away.
Alton Huval, a member of the school board, testified that he had visited the Coteau school more than 100 times and had never smelled a foul odor in the area, although he admitted that he had never gone to Ms. Freyou's property to smell. Mr. Huval stated that the effluent from the facility would flow back into the ditch on Ms. Freyou's property, but he indicated that this occurs only during heavy rains when the entire area becomes flooded.
Thus, the trial court was confronted with conflicting allegations of fact, regarding the ultimate destination of the effluent, both of which were supported by the testimony of witnesses. Significant evidence supports the court's determination that the effluent from the treatment facility has not "backed up" onto Ms. Freyou's property since the initial overflow, and therefore this holding is not manifestly erroneous.
Additionally, we note that discharge of treated effluent into a public drainage system, such as the Highway 88 drainage channel, is completely proper. Thigpen v. Moss, 504 So.2d 664 (La.App. 3 Cir.1987). Michael Stockstill, Sanitary and Parish Manager for DHH, testified that the Coteau treatment facility has continuously operated satisfactorily, other than the accidental discharge in 1985; and that the effluent is not "raw sewage," as claimed by Ms. Freyou, but domestic wastewater treated to comply with DEQ and DHH requirements. Robert DeKeyzer, an analytical chemist employed to test the discharge, testified that the discharge contained high levels of bacteria on a few occasions between 1986 and 1993 but that the facility generally operated well within its permit requirements and was never in danger of being shut down.

II. DAMAGES
Ms. Freyou claims that the award of $300.00 does not compensate her adequately for the mental anguish she suffered as a result of the discharge. She stated that "having sewerage all around" made her nervous, *164 anxious, and depressed. She was taking Prozac and other medication for depression, and her husband testified that she can hardly sleep because she is so agitated by the sewage problem. Dr. Jose Mata, Ms. Freyou's treating physician, testified that she suffers from anxiety and depression that were caused or aggravated by the situation with the School Board.
An award for mental anguish, allegedly resulting from property damage, is permissible only when the property is damaged 1) by an intentional or illegal act; 2) by an act for which the tortfeasor will be strictly or absolutely liable; 3) by acts constituting a continuing nuisance; or 4) when the owner is present or nearby and suffers psychic trauma as a result. Kolder v. State Farm Ins. Co., 520 So.2d 960 (La.App. 3 Cir.1987). Every incident of property damage is necessarily accompanied by some degree of worry and consternation, and the owner of damaged property may not recover for such mental anguish unless she proves that she has suffered a psychic trauma in the nature of or similar to a physical injury, as a direct result of the property damage. Trim v. South Eastern Exp., Inc., 562 So.2d 26 (La.App. 5 Cir.1990). Moreover, recovery may be granted only if the property in question is in fact damaged. Kolder, 520 So.2d 960.
In the case sub judice, there was no intentional illegal act, no act for which the School Board could be strictly or absolutely liable, and no continuing nuisance or trespass. Ms. Freyou was not nearby when the sewage backed up onto her property, because she lives 8 miles away from the property in question, which is sugar cane farmland. Jerry Fontenot, an agronomist, testified that the soil was not damaged by the initial overflow. Moreover, Dr. Mata described Ms. Freyou as a naturally nervous person, and he admitted that her anxiety arises from her perception of the situation, which may not be accurate. Most of her complaints involve her belief that sewage has continued to back up onto her property, which we have decided is not supported by the record. Consequently, even though Ms. Freyou's anxiety, depression, and nervousness may be real, they stem from her own misperception of the situation rather than from any actual wrongdoing by defendant. Thus, the School Board has not caused Ms. Freyou's mental anguish related to the alleged "continuing trespass," and may not be held accountable for it. The School Board has not challenged the damage award of $300.00 for the 1985 discharge, and therefore we uphold this award.

III. PERMANENT INJUNCTION
Ms. Freyou urges this court to enjoin the School Board from utilizing the current discharge line along Highway 88 in order to prevent the effluent from trespassing on her property.
A permanent injunction is an extraordinary remedy appropriately ordered only to prevent damage that is likely to occur in the future rather than to punish for past damage. Simon v. Southwest Louisiana Electric Membership Corp., 267 So.2d 757 (La.App. 3 Cir.), writ denied, 263 La. 1025, 268 So.2d 680 (1972). Thus, no injunction may be issued when the situation sought to be enjoined has already been remedied. Smith v. Jackson Parish School Board, 300 So.2d 252 (La.App. 3 Cir.1974).
The School Board has taken appropriate steps to ensure that no effluent will be discharged onto Ms. Freyou's property in the future, and we have already held that they have been successful in this endeavor. Thus, no future damage is threatened. A permanent injunction is inappropriate in such circumstances. Consequently, we hold that the trial court properly refused to grant the injunction requested by Ms. Freyou.

CONCLUSION
For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are assessed against appellant, Jeanne Freyou.
AFFIRMED.