737 So.2d 793 (1999)
Ford T. HARDY, Jr., et al.
v.
POYDRAS PROPERTIES, et al.
Maurice Westridge and Wanda Westridge
v.
Poydras Properties, et al.
Nos. 97-CA-2547, 98-CA-0544.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1999.
Rehearing Denied February 17, 1999.
Writ Denied May 7, 1999.
*795 Maurice Westridge, David Westridge, Brookhaven, in Proper Person, for Plantiffs-Appellees.
John V. Baus, Jr., David S. Daly, L.L.P., Jennifer C. DeBlanc, Baus, Hammond & Daly, New Orleans, Louisiana, Attorneys for Defendant-Appellant Twin Cities Insurance Co.
Darryl J. Foster, Lemle & Kelleher, L.L.P., New Orleans, Louisiana, Attorney for Defendants-Appellants Claiborne Builders, Inc. and United States Fidelity & Guaranty Co.
Ford T. Hardy, Jr., Howard, Laudumiey, Mann, Reed & Hardy, New Orleans, Louisiana and Donna S. Cummings, New Orleans, Louisiana, Attorneys for Plaintiffs-Appellants Curtis and Mary Bordenave, d/b/a Cane River Creole Meat Pie, Inc.
Court composed of Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES III, and Judge STEVEN R. PLOTKIN.
KLEES, Judge.
These consolidated appeals arise from several judgments rendered in two separate lawsuits for property damages and economic losses sustained as a result of a fire. For the reasons stated herein, we affirm in part, reverse in part and remand the case for further proceedings consistent herewith.

FACTS AND PROCEDURAL HISTORY
The instant lawsuits were filed by various lessees and sub-lessees of 536 Baronne Street following a fire on December 9, 1993 which destroyed the building and its contents. The plaintiffs named as defendants the owner of the building, Poydras Properties, Inc. and Claiborne Builders, Inc., the general contractor of the building located at 550 Baronne Street where the fire allegedly began. Also named as defendants was the primary insurer for Claiborne Builders, USF & G, as well as Claiborne's excess insurer, Twin City Fire Insurance Company ("Twin Cities").
*796 The suits were initially consolidated for review in the trial court. Two of the plaintiffs in the suit, Maurice and Wanda Westridge, moved to recuse the trial judge, and their claims were eventually transferred to another section of the district court. The claims brought by the remaining plaintiffs were contained in the suit captioned as Ford T. Hardy, Jr. et al. vs. Poydras Properties.
The trial of these matters were bifurcated, with the liability phase of the trial of all claims arising out of the fire being held in October of 1988 before a Commissioner of Civil District Court. Following a trial on liability, the Commissioner recommended that there be a judgment rendered in favor of plaintiffs, and against Claiborne Builders and USF & G. By an amended judgment dated October 4, 1990, the trial court adopted the Commissioner's findings and recommendations. This judgment was subsequently affirmed by this Court on appeal, and writs were denied by the Supreme Court. See, Westridge v. Poydras Properties, 598 So.2d 586 (La.App. 4th Cir.1992), writ denied, 605 So.2d 1092, 1093, 1099.
Both prior to and after the liability judgment, but prior to any judgment of damages, USF & G entered into several settlements with various plaintiffs who had asserted claims arising out of the fire. According to the briefs, those settlements and dates are as follows:

Crutcher and Tufts $ 2,000.00 10/21/88
Elizabeth Morrison $ 12,500.00 9/26/90
Rebecca Sawyer $ 30,000.00 9/03/93
Fireman's Fund $ 40,000.00 10/05/93
Barbara Taylor $ 55,000.00 10/07/93
State Farm $183,600.00 11/12/93
Clay McGehee $ 25,000.00 03/21/94
Ponchartrain Cadillac $ 20,000.00 03/29/96
Ford T. Hardy, Jr. $205,000.00 04/22/96
R. Collins Vallee $150,000.00 04/23/96
 ___________
 TOTAL $723,100.00

The damage claims of plaintiffs, Ford T. Hardy, Jr. and R. Collins Vallee, were initially set for trial on April 3, 1996. Prior to trial, a dispute arose between USF & G and Twin Cities as to the remaining limits of USF & G on its primary policy. The trial date was continued, and plaintiffs Ford and Vallee eventually settled their claims with USF & G. USF & G reserved the right to proceed against Twin Cities for all payments made over and above the primary policy limits.
USF & G as the primary insurer issued a comprehensive general liability policy to Claiborne Builders, Inc. with limits of $500,000.00 per occurrence. Twin Cities is the excess carrier, and issued a policy to Claiborne Builders with limits of $20 million over the underlying limits of the USF & G policy. Both policies provide that the insurer "shall pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages ...". The parties disputed whether interest was included in the settlement agreements or whether the principal amount of the settlements only should be attributed to the primary insurer's policy limits. USF & G took the position that its $500,000.00 policy limits had been reduced by the prior settlements dollar for dollar, with the exception of the settlements with State Farm and Fireman's Fund, which USF & G admitted contained an interest element.
Twin Cities, on the other hand, contended that USF & G was liable for interest on its limits, and that each settlement confected after the liability judgment contained an interest component, calculated by determining the amount of interest due from date of judicial demand until date of settlement. Twin Cities contended that USF & G would have to expend it full policy limits plus interest on those limits before the Twin Cities policy would be applicable.
In an effort to resolve this dispute, Twin Cities filed a motion for partial summary judgment in the Hardy lawsuit on the issue of USF & G's remaining limits. By judgment dated April 3, 1996, the trial court granted Twin Cities' motion, holding that USF & G had limits of $500,000.00 plus interest and that the settlements which occurred subsequent to the judgment on liability contained an interest component. USF & G sought supervisory *797 review in this Court. A panel of this Court denied the writ, stating that USF & G had an adequate remedy on appeal of this judgment. In the meantime, USF & G settled with Ford and Vallee, reserving their rights to recoup the payment above their policy limits if the matter were reversed on appeal.
Following this settlement, two claims for damages as a result of the fire remained outstanding: the claims of Maurice and Wanda Westridge, the lessees of 536 Baronne Street, and Cane River Creole Meat Pie, Inc., a sublessee of the premises. Prior to these trials, USF & G brought a cross-claim against Twin Cities on the basis that USF & G had reached its policy limits. Twin Cities filed a motion for partial summary judgment in the Westridge case on the interest issue. By judgment dated September 13, 1996, the trial court granted this motion.

Cane River Creole Meat Pie, Inc. and the Bordenaves
A damage trial on the claims brought by Cane River and its two shareholders, Mary and Curtis Bordenave, was held on September 11-13, 1996. A judgment was rendered on December 30, 1996 in favor of plaintiffs and against Claiborne Builders, Inc. and USF & G in the amount of $100,000.00. Defendant filed a motion for new trial which was granted by the trial court. By judgment rendered on February 7, 1997, the trial court awarded Cane River an amount of $100,000.00, less a credit to defendant in the amount of $25,000.00 for amounts paid by Fireman's Fund. The court dismissed the personal claims of Curtis and Mary Bordenave. The trial court also dismissed the cross claim of USF & G against Twin Cities for the reasons assigned in the motion for partial summary judgment previously granted by the trial court.
From this judgment, Claiborne Builders and USF & G have appealed the award of $100,000.00 in favor of Cane River. Twin Cities has also appealed from this judgment challenging the award of property damages to Cane River. USF & G also appeals from the judgment dismissing its cross-claim against Twin Cities on the interest issue. Plaintiffs, Cane River and Mary and Curtis Bordenave also appeal from this judgment based on the trial court's failure to award damages for lost profits, mental anguish and leasehold improvements.

The Westridges
The damage trial on the claims brought by Wanda and Maurice Westridge was tried on April 28, 1997 through May 1, 1997. Following trial, judgment was rendered in the Westridges' favor in the amount of $226,261.00, assessed as follows: $80,359.55 against Claiborne Builders and USF & G, the primary insurer, and $145,900.45 against Claiborne Builders and Twin Cities, the excess insurer.
USF & G deposited the amount of the judgment rendered against it plus interest into the court registry and filed a devolutive appeal, arguing that the damage award was excessive and the trial court erred in rendering judgment in plaintiffs' favor and in dismissing USF & G's crossclaim against Twin Cities. Twin Cities brought a suspensive appeal from this judgment challenging the amount of the damage award. Although the Westridges filed an appellate brief in this matter, the record indicates that no motion for appeal was filed on their behalf.

DISCUSSION
The appeals of USF & G, Twin Cities and the Bordenaves/Cane River have been consolidated for our review in this Court. We will first address the issues raised by USF & G and Twin Cities regarding the amount of the damage awards rendered in plaintiffs' favor. We will also address the issues raised on appeal by Cane River and the Bordenaves regarding the judgment of February 7, 1997. Finally, we will address the appeal of USF & G concerning the trial court's dismissal of its cross-claim on the issue of whether interest was included in the settlements with plaintiffs.

*798 Standard of Review of Damage Awards

The function of an appellate court in reviewing a damage award is not to decide what it considers an appropriate award on the basis of the evidence, but rather only to review the exercise of the trier of fact's discretion. A reviewing court might disagree with the amount of the award, but it should not substitute its opinion for that of the trier of fact. Appellate review of awards for damages is limited to determining whether the trier of fact abused its much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); LSA-C.C. article 1934(3).
Only after making the finding that the record supports a finding that the lower court abused its much discretion in making its award can the appellate court disturb the award, and then only to the extent of raising it or lowering it to the lowest or highest point which is reasonably within the discretion of the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). With this standard in mind, we will now review the damage awards rendered by the trial court.

The award in favor of Wanda and Maurice Westridge
Both USF & G and Twin Cities were cast in judgment and appeal from the judgment of the trial court rendered in favor of Wanda and Maurice Westridge. The Westridges were the lessees of the building at 536 Baronne Street, and sublet space in the building to various tenants. In their petition filed on June 28, 1984, the Westridges sought damages as a result of the fire for the following items: loss of movable property, loss of profits and income from the leasehold interest, inconvenience and aggravation, expense of relocation and mental anguish. Following trial, the trial court rendered damages in favor of the Westridges in the amount of $226,261.00, itemizing the damages as follows:

Loss of Lease $145,000.00
Loss of Personal Property $ 42,261.00
Mental Anguish $ 35,000.00

USF & G contends that the trial court's awards of damages for the loss of lease and the loss of personal property are excessive and not supported by the evidence. Twin Cities also argues that the awards for loss of lease and loss of personal property were excessive, and further contends that the trial court erred in awarding damages to the Westridges for mental anguish. Twin Cities further argues that based on the factual and legal errors by the trial court, this Court should review the record on a de novo basis.
The record shows that plaintiffs, Maurice and Wanda Westridge, leased 536 Baronne Street from Albert Mintz on June 1, 1981. The lease had a ten year term. Plaintiffs renovated the second floor of the building, and subleased this space to various tenants. Plaintiffs allege that as a result of the fire, they lost the investment they had put into the renovation and also lost the opportunity to renovate and sublease the remainder of the building.
With regard to the damages awarded for the loss of the Westridges' lease as a result of the fire, the trial court stated in its reasons for judgment:
Considerable time and argument have been devoted to the value of the leasehold and the arguments range from zero by defendant to $595,000.00 by plaintiff. A cursory reading of the briefs in this case can give this court all the background necessary to determine its history. However the testimony reflects that some short time prior to the fire, the owners had offered plaintiff $110,000.00 for his leasehold interest and he was willing to sell for $185,000.00. The truth probably lies somewhere in between and a value of $145,000.00 is probably correct. (Plaintiff spent $90,000.00 of his own cash renovating the first and second floors.)
The record in this case indicates that plaintiffs had a lease agreement for the lease of the entire building which extended several years beyond the date of the fire. *799 The plaintiffs testified that they had invested a substantial sum of money improving the premises, and the trial court evidently found this testimony to be credible. Further, the record indicates that the plaintiffs had entered into several subleases and were receiving rental income from the property which was lost due to the fire. The plaintiffs also testified that they had plans to renovate the remaining floors of the building and sublease this space. Although plaintiffs were evidently having financial troubles at the time of the fire and had not yet begun the renovation of the remaining floors, the potential remained for future income from the leasehold interest which was viable at the time of the fire.
The trial court rejected defendants' arguments that plaintiffs' lease had little or no value because their rent was overdue and eviction proceedings had been filed against them. The record indicates that plaintiffs had not been evicted from the premises at the time of the fire, and that the leasehold interest still retained some value.
At trial, plaintiffs offered the testimony of Jean Felts, a real estate appraiser, who stated that she appraised the value of the leasehold interest to the owner of the property at $545,000.00 and the value of the "sandwich leasehold interest" (the value of the interior of a lessor who in turn has subleases to the property) at $29,500.00. Defendants contend that the value of the leasehold interest could not be greater than $29,500.00, which was the figure plaintiffs' expert testified was the value of the Westridges' leasehold interest.
The trial court set the value of the lease at $145,000.00. In reaching this figure the trial court relied on the offer given to plaintiffs to purchase the leasehold interest after the building was sold approximately one year prior to the fire. Although the record indicates that plaintiffs' expert stated the value of the sandwich leasehold interest was $29,500.00 at the time of the loss, the trial court also considered plaintiffs' investment in renovating the property. We find no error in the trial court's decision to value the leasehold interest based on an offer made prior to the litigation rather than on the testimony of an expert who examined the property after the fire occurred. While the trial court's award for the loss of plaintiffs' leasehold interest may be considered by some to be high, we find the trial court's assessment of this item of damages to be reasonable in light of the evidence in the record. Accordingly, we fail to find an abuse of the trial court's discretion in rendering this award.
Defendants next contend that the trial court's award to plaintiffs for the loss of personal property in the fire was excessive. At trial, plaintiff introduced testimony of himself and his family members regarding the property which was contained in the building at the time of the fire. With regard to the value of this property, plaintiffs introduced several exhibits which contained summaries of the property contained in the building with values ranging from $813,020.00 to $74,889,004.00.
The trial court rendered judgment in the amount of $46,261.00 for the loss of plaintiffs' personal property in the building. In its reasons for judgment, the trial court stated:
Taking all the testimony as indicative of actual assets in the building, the court looks to two places wherein valuations were stated by plaintiff which appear realistic of the actual loss. First is his $32,006.00 loss at cost listed in his income tax return and the second is Exhibit # 1 of Maurice Westridge dated 12/17/92 which while it doesn't seem to list everything testified to, does appear to be not cost, but replacement value of personal property lost and totals $46,261.00. The court feels more justified in accepting this valuation as proper.
Defendants contend that plaintiffs failed to provide any evidence of the value of any of the property claimed to be lost in the fire. Defendants contend that the lack of *800 receipts or other supporting documentation showing the value of the property casts doubt on the reliability of the plaintiffs' testimony regarding the loss of property. Further, defendants argue that the testimony of the witnesses with regard to the property which was actually in the building is conflicting. Finally, defendants contend that the award for the loss of property can be no greater than the amount Mr. Westridge claimed on his income tax return, $32,006.00.
We have reviewed the record and find much testimony on the description of the Westridges' property contained in the building at the time of the fire. Although the testimony was conflicting, the trial court accepted the testimony of plaintiffs' son, David Westridge, and his summary of the personal property lost in the fire. Obviously, the witnesses' detailed testimony of the property in the building establishes that there was in fact sufficient proof of a loss. Further, although defendants make much of the fact the plaintiffs failed to present receipts or documentation for the destroyed property, plaintiffs testified that all the records were contained in the building and were destroyed along with the property.
Under the particular circumstances of this case, where the amount of the loss was not capable of being proven to a legal certainty, we find that the trial court must be given much discretion in the determination of such damages. In the present case, the trial court had a reasonable basis for the exercise of its discretion, i.e., the list prepared by Maurice Westridge on 12/17/92 which was introduced by defendants at trial in an attempt to show that plaintiffs' testimony at trial concerning the value of the property was greatly exaggerated. We find that the trial court's determination of the value of the personal property destroyed in the fire in this case to be within its discretion, and we decline to disturb this award.
Twin Cities next contends that the trial court erred in rendering an award to the Westridges for mental anguish sustained as a result of this fire. In its reasons for judgment, the court stated:
Since this is a tort claim, plaintiff is entitled to an award for mental anguish and if self-induced anguish were included, no policy limits would suffice. However, most of the anguish was self-induced and considering the plaintiffs witnessing the destruction of his brainchild and future and excluding his own shortcoming which defendant should not have to fund, it appears that plaintiff should be awarded the sum of $35,000.00 for mental anguish.
Louisiana law allows recovery for mental anguish resulting from property damage when the owner is present or nearby and suffers psychic trauma as a result. See, Freyou v. Iberia Parish School Bd., 657 So.2d 161 (La.App. 3 Cir. 1995). In the present case, Maurice and Wanda Westridge testified that they were both present during most of the fire and watched the building containing their personal property and their lifelong dream of renovating and subleasing the building being destroyed. Although plaintiffs did not introduce medical evidence to support their claim, the record clearly supports an award of damages for mental anguish. Maurice Westridge testified concerning the trauma he experienced at seeing his personal property and lifelong dream destroyed. Mrs. Westridge testified that although she is a very strong person, the destruction of the building in the fire has been very difficult for her, and she has been unable to sleep and was on antidepressant medication for approximately six months. The Westridges' son, David, confirmed the difficulty his parents experienced as a result of this tragedy. The record is abundantly clear that plaintiffs have become anxious, depressed and distraught as a result of the fire destroying their property. They basically lost their livelihood in the fire, as well as their *801 dreams for future prosperity. Under the particular circumstances of this case, we find that the award of damages in the amount of $35,000.00, although generous, falls within the discretion of the trial court.

The award in favor of Cane River Creole Meat Pies, Inc.
USF & G contends that the award to Cane River of $75,000.00 is excessive. Twin Cities contends that the trial court's award to Cane River for property damage is not supported by evidence in the record and that the trial court erred with regard to the burden of proof required to prove property damage. By their appeal, the Bordenaves, d/b/a Cane River Creole Meat Pies, Inc., contend that the trial court erred in failing to award them damages for loss of profits, loss of leasehold improvements and mental anguish.
With regard to the award of property damage, the trial court stated in its reasons for judgment as follows:
Much of the volume of exhibits received during trial and attached to post trial memoranda are directed toward establishing plaintiffs' claim for Property Damage. Much testimony was received concerning the efforts of the Bordenaves in altering the leased premises to make them suitable for operation of a restaurant, in finding, repairing and renovating specialized equipment used in the restaurant and the cost and value, both sentimental and market, of items destroyed by the fire. All their efforts facilitated opening of their restaurant with a minimal cash investment. The balance of the capital investment was in the form of work performed by Mr. and Mrs. Bordenave. Their estimates of the value of furniture, equipment and supplies while probably somewhat biased, was unchallenged by any competent evidence.
As in the Westridge case, defendants contend that plaintiffs failed to meet their burden of proof of showing the value of the property allegedly destroyed in the fire. Defendants contend that the receipts submitted by plaintiffs fail to support the award of damages by the trial court.
The trial court in the present case listened to the testimony of Mary and Curtis Bordenave with regard to the property that was in the building at the time of the fire. Without going into every item of property loss claimed by plaintiffs, we note that the plaintiffs testified that many of the receipts and documentation of loss were in the building and destroyed in the fire. The documentation was therefore unavailable for presentation at trial, and the plaintiffs tried to reconstruct to the best of their ability the value of the property contained in the building on the date of the fire. Although the value of these items could not be proven to a legal certainty, the trial court reviewed the evidence and set a value on the property which was supported by the testimony at trial. The trial court did not err in failing to itemize a specific amount for each item of damage awarded. The court stated that the category of property damage included cost of improvements to the leased property, furniture, equipment, cash and other miscellaneous losses, including good will. We fail to find that the trial court's award of $75,000.00 for this item of damages constitutes an abuse of discretion.
By their appeal, plaintiffs contend that the trial court erred in failing to award damages for loss of profits and earning capacity and loss of leasehold improvements. Plaintiffs also contend the trial court erred in failing to render an award for mental anguish.
With regard to lost profits, the trial court found that no loss of profits were proven at trial. We find that the record supports this determination. The tax returns submitted by plaintiffs for the three years preceding the fire indicate that plaintiffs sustained losses in the operation of their restaurant. Although plaintiffs claim the restaurant business does not see a profit until after the first several years *802 of operation, this argument is too speculative to support an award based on loss of profits. The trial court rejected the testimony of plaintiffs' experts as to possible future sales and profits of the business because the expert opinions were not supportable by known data. The trial court relied on the testimony of defendants' expert that the past history of a business operation is the best measure of its potential for profitability in the future. The trial court has great discretion in matters of credibility of witnesses, and we find no manifest error in the trial court's determination that plaintiffs failed to prove a loss of profits or earning capacity.
We likewise find no merit in plaintiffs' argument that the trial court erred in failing to render a separate award for loss of leasehold improvements and or leasehold interest. The lease agreement between the parties in this case provided that all improvements would remain the property of the lessor and that the lessee waived all rights to compensation for these improvements.
Finally, with regard to mental anguish, the plaintiffs contend that the trial court erred in failing to render an award to them for the mental anguish they sustained in watching the destruction of their restaurant. A review of the record indicates that the plaintiffs undoubtedly suffered a traumatic experience in watching this event. However, the record indicates that the restaurant was owned by the corporate entity, Cane River Creole Meat Pies, Inc. Further, the lease was executed in the corporate name, rather than in the individual names of the corporate shareholders. Louisiana law provides that a shareholder of a corporation may not recover for mental anguish and physical suffering from wrongful acts to a corporation. Bolanos v. Madary, 609 So.2d 972 (La.App. 4 Cir.1992), writ denied, 615 So.2d 339 (La.1993). Thus, the shareholders of a corporation have no claim for mental anguish for damage to corporate property. Although the Bordenaves testified that a few of their personal items were in the restaurant at the time of the fire, this fact is insufficient to sustain a claim for damages. We find no error of the trial court in failing to award damages for mental anguish sustained by Mary and Curtis Bordenave.

The Interest Issue
Twin Cities filed a motion for partial summary judgment in both the original Hardy lawsuit and in the Westridge suit, arguing that USF & G was liable for its policy limits plus legal interest thereon in all settlements entered into after the 1992 judgment of liability. The trial courts in both cases granted the motion. USF & G subsequently filed a cross-claim in the both lawsuits against Twin Cities, contending that it was entitled to judgment against Twin Cities for any sums expended by USF & G in settlement above its policy limits. The trial court dismissed the cross-claim and rendered judgment against USF & G for the full amount of the Hardy judgment and for a portion of the judgment rendered in the Westridge case. USF & G now appeals from these judgments of the trial courts.
USF & G contends that at the time it entered into the various settlement agreements, there was no judgment sounding in damages against USF & G, and there was no obligation to pay interest. USF & G claims therefore that with respect to these yet unliquidated claims, all amounts paid by USF & G in settlement should be applied to reduction of its $500,000.00 policy limits, in effect exhausting the primary policy prior to the time of the damage trials at issue herein.
Conversely, Twin Cities contends that because of the judgment of liability entered by the court against USF & G's insured in 1992, USF & G was obligated to pay interest on plaintiffs' claims as a matter of law. Twin Cities contends therefore that the settlement payments must be imputed to interest first, and then *803 to principal. The only amounts which would reduce the policy limits of the primary insurer, Twin Cities argues, would be payments on principal. Further, Twin Cities contends that USF & G should be estopped from taking its current position on the interest issue, because counsel for USF & G was in agreement that interest was included in the settlement agreement from the judgment of liability in 1992 until 1996 when the Hardy damage trial was scheduled.
The statute governing legal interest in tort cases is LSA-R.S. 13:4203, which provides:
Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto," which may be rendered by any of the courts.
The imputation of interest is governed by La. C.C. article 1866 which provides:
An obligor of a debt that bears interest may not, without the obligee's consent, impute a payment to principal when interest is due.
A payment made on principal and interest must be imputed first to interest.
The principal issue presented for our review, then, is whether at the time the settlement agreements were confected, USF & G had a legal obligation to pay interest either on the basis of La. R.S. 13:4203 or on some other principle of law. In examining this issue we must first consider whether the judgment on liability entered by the trial court in 1992 constitutes a "judgment, sounding in damages, `ex delicto'," sufficient to require the payment of interest on settlements confected after the date of this judgment.
With regard to whether the USF & G had a legal obligation to pay interest at the time of the settlement agreements, both insurers cite to several Louisiana cases dealing with underinsured motorist coverage which provide that interest is due on any amounts paid, including a pre-judgment tender, after a judgment of damages has been rendered by the trial court. However, the issue of whether legal interest attaches following a judgment on liability alone and prior to a judgment of damages has not been previously addressed by Louisiana courts.
The language of La. R.S. 13:4203 is clear and unequivocal: legal interest attaches on all judgments "sounding in damages." The liability judgment rendered in 1992 was not a judgment "sounding in damages" within the meaning of La. R.S. 13:4203, and absent a monetary award of damages, there is no basis for a calculation of interest. Twin Cities has cited no case law, nor has our research revealed any support for its argument that the legal interest attaches from a judgment of liability. Accordingly, we reject Twin Cities' argument that interest began to run as a result of this judgment rendered in 1992. Thus, La. R.S. 13:4203 is not applicable to the settlement agreements in this case.
In support of its position that interest is due on the settlement amounts paid by USF & G notwithstanding the liability judgment, Twin Cities cites to the Supreme Court case of Ridenour v. Wausau Ins. Co., 627 So.2d 141 (La.1993), which holds that a UM insurer's unconditional tender of a payment less than its policy limits will first be imputed to the interest owed by the insurer, even where tender is made prior to a judgment. In that case however, the court made a determination following the rendition of judgment against a UM insurer that interest was due at the time the pre-trial unconditional tender was made by the insurer. The basis for this ruling was that the UM insurer was solidarily liable with the tortfeasor, and pursuant to LSA-R.S. 13:4203, legal interest runs from the date of judicial demand on the entire amount of the judgment, including the pre-trial tender.
However, the facts in the present case are distinguishable from the situation in Ridenour. The present case does not involve a UM insurer who made an unconditional tender and was subsequently cast in judgment, thus invoking the provisions of *804 R.S. 13:4203. Rather, in the present case, the primary insurer, USF & G, settled with the plaintiffs, and the damage claims asserted by these plaintiffs were never brought to judgment.
Absent a specific provision in the insuring agreement, we know of no provision in Louisiana law that obligates an insurer for the payment of interest when a case is settled with a claimant prior to trial. Although the potential of exposure to interest following the rendition of a judgment of damages may affect the amount offered and accepted in settlement, this does not create a legal obligation for the payment of interest prior to judgment.
We recognize that an insurer should be aware of its ultimate responsibility, in the event of judgment, to pay, in addition to policy limits, judicial interest on such policy limits from date of judicial demand. In determining whether to accept a compromise offer, the insurer must consider its responsibility for such payment in order to protect the insured against excess judgment. Hodge v. American Fidelity Fire Ins.Co., 486 So.2d 233 (La.App. 3rd Cir.1986) writ denied, 489 So.2d 917 (La.1986). However, in the present case, there was no judgment of damages to require the payment of interest on the policy limits. Further, there is insufficient evidence to support a finding that an excess judgment would be rendered against the insured. Although liability had been established, the record does not conclusively show that the plaintiffs' claims would amount to more than the $500,000.00 policy limits provided by the USF & G policy. Further, the clear terms of the Twin Cities policy provided that the excess carrier would cover losses over the underlying limits of $500,000.00, and the primary insurer therefore did not leave the insured exposed by failing to settle for its policy limits plus interest.
Further, there is nothing in the record before us that indicates that plaintiffs consented to impute the settlement amount to interest, rather than principal. In fact, the releases executed by McGehee, Taylor, Sawyer, Morrison, Tufts, Pontchartrain Cadillac, Hardy and Vallee which are found in the record provide no indication as to what part of the settlement amount, if any was for interest. Plaintiffs did not reserve their right to seek interest, and their release of the principal without a reserve as to interest operates as a release of the claim for interest. La. C.C. art. 2925; Pugh v. Gondrella, 522 So.2d 1257 (La.App. 4th Cir.1988). Absent an indication in the settlement agreements that interest was paid by the insurer, we find no basis for the imputation of interest to the insurer's debt.
The language of the insurance policies also fails to support the argument of Twin Cities. The USF & G policy provides coverage for property damage with limits of liability in the amount of $500,000.00 for each occurrence. There are no supplemental pay provisions which require the payment of any amounts above these policy limits. However, in the event of a judgment of damages against USF & G, interest would attach over the policy limits pursuant to the provisions of La. R.S. 13:4203. The Twin Cities policy provides that the company will indemnify the insured for the "ultimate net loss" in excess of the underlying limit, which is defined as $500,000.00. Thus, under the terms of the policy, Twin Cities is responsible for those losses sustained by the insured that are greater than the $500,000.00 provided by USF & G.
Further, at the time the settlements were made, there was no "debt that bears interest" within the meaning of La. C.C. article 1866. The plain language of the insurance policy fails to indicate that interest was due on a settlement agreement, and debt to pay plaintiffs' claims did not bear interest until the provisions of La. R.S. 13:4203 were invoked following the judgment of damages.
Twin Cities argues that it would be inequitable for the primary insurer to drag out *805 the litigation and then not be held responsible for the amount of interest that accrues during this time period. However, the basis for the payment of interest under Louisiana law is well-established. La. R.S. 13:4203 clearly provides that interest attaches on all judgments sounding in damages. There was no such judgment rendered in this case prior to the primary insurer's exhaustion of its policy limits.
We likewise find no merit in Twin Cities arguments regarding estoppel. If the excess insurer had wanted the settlement agreements to contain an interest component, it should have required such language to be present in the agreement prior to its confection. Absent any indication in the record that interest was paid to the plaintiffs, we hold that the payments must be imputed to principal, the debt that the primary insurer had the greatest interest in discharging. Thus, the trial court erred in determining that the settlement agreements contained an interest component and in dismissing USF & G's cross-claim against Twin Cities for the amounts paid over its policy limits.
We fail to find as a matter of law that Twin Cities was entitled to judgment in its favor holding that the settlement agreements confected with the plaintiffs in this case contained an interest component. We therefore reverse the judgments granting Twin Cities' motion for partial summary judgment on this issue.
We hold that the settlement agreements confected between plaintiffs and USF & G must be attributable to the principal debt of USF & G until USF & G's policy limits are exhausted. USF & G is entitled to recover from Twin Cities all amounts of settlement which were paid over the $500,000.00 policy limits. However, from the record before us, we are unable to determine at what point USF & G exhausted its policy limits under the holding of this case. The record is clear that the settlement agreements entered into prior to the damage trials amounted to an excess of $500,000.00. We therefore must reverse the judgments rendered against USF & G for the damages of the Westridges and Cane River. We also remand the case to the trial court for a determination of the merits of USF & G's cross claim against Twin Cities.

CONCLUSION
Accordingly, for the reasons assigned herein, the judgment of the trial court rendered July 3, 1997 in favor of Maurice and Wanda Westridge and against Claiborne Builders, Inc. in the sum of $226,261.00 is affirmed. Insofar as the judgment is rendered against USF & G, that portion of the judgment is reversed and the judgment is recast against Claiborne Builders, Inc. and Twin City Insurance Company. The trial court's division of these damages between USF & G and Twin Cities is also reversed.
The judgment rendered on February 7, 1997 and signed on April 2, 1997 in favor of Cane River Creole Meat Pies, Inc. and against Claiborne Builders, Inc. in the sum of $75,000.00 is affirmed. However, the portion of the judgment that casts USF & G is reversed and the judgment is recast against Claiborne Builders, Inc. and Twin City Insurance Company. The portion of the judgment which dismisses USF & G's cross-claim against Twin Cities is also reversed.
Finally, the judgments of April 3, 1996 and September 13, 1996 granting Twin Cities' motions for partial summary judgment are reversed. The case is remanded to the trial court for further proceedings consistent herewith.
Each party is to bear its own costs of this appeal.
JUDGMENTS AFFIRMED IN PART; REVERSED AND RENDERED IN PART AND CASE REMANDED.