# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-320


**GALYN AND JAMES MONTGOMERY**

**VERSUS**

**STATE FARM FIRE & CASUALTY COMPANY**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-4660
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.


**AFFIRMED. ADDITIONAL ATTORNEY
FEES AWARDED TO APPELLEE.**

**Rudie Ray Soileau, Jr.**
**Jackey W. South**
**Lundy, Lundy, Soileau & South, LLP**
**501 Broad Street**
**Lake Charles, Louisiana 70601**
**(337) 439-0707**
**Counsel for Plaintiffs/Appellees:**
    **Galyn and James Montgomery**

**Todd M. Ammons**
**Somer G. Brown**
**Stockwell, Sievert, Viccellio, Clements & Shaddock**
**Post Office Box 2900**
**Lake Charles, Louisiana 70602**
**(337) 436-9491**
**Counsel for Defendant/Appellant:**
    **State Farm Fire & Casualty Company**

**KEATY, Judge.**

State Farm Fire & Casualty Company (State Farm) appeals from a judgment rendered in favor of its insureds, Galyn and James Montgomery (Plaintiffs), finding State Farm liable for damages done to Plaintiffs' home by Hurricane Rita and its aftermath and awarding Plaintiffs damages, penalties, attorney fees, and costs. Plaintiffs answer the appeal, seeking an additional award of damages for mental anguish and an increase in their attorney fees award. For the following reasons, we affirm the judgment, deny Plaintiffs' request for additional damages, and award Plaintiffs additional attorney fees for work necessitated by this appeal.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs own a home in Lake Charles, Louisiana, that was damaged as a result of Hurricane Rita (Rita) which struck the area on September 23 and 24, 2005. The home was covered by a policy of homeowner's insurance issued by State Farm.[1] In October of 2005, Plaintiffs provided State Farm with an estimate for the cost to repair damage to their home caused by Rita. The estimate included amounts for repairs to the roof, fireplace, stucco, gutters, and fence. It also called for electrical and plumbing repairs, mold treatment, sheetrock repair, and painting. State Farm paid Plaintiffs' claim within thirty days of its receipt of the estimate[2] and later advised them to contact their agent if they found any additional damage.

On March 12, 2007, Plaintiffs contacted State Farm regarding additional damages that they had recently discovered, most significantly damage to the home's rafters in the attic. State Farm sent an adjuster to inspect Plaintiffs' home and thereafter paid them an additional $585.28 for damage to three windows. Plaintiffs were told that they needed to get an engineering opinion to support their

---

[1] Coverage is not at issue in this appeal.

[2] State Farm paid Plaintiffs a total of $13,349.00 which represented the total amount of the estimate, less Plaintiffs' deductible.

claim that any additional payment was due from State Farm as the result of damages caused by Rita. After Plaintiffs submitted a report from an engineer that conflicted with the opinion of the State Farm adjuster who had inspected the home in March of 2007, State Farm hired its own engineer to re-inspect the home.

Plaintiffs filed this suit against State Farm on August 20, 2007, when it became clear that State Farm was denying the remainder of their supplemental claim for damages. Although the matter was originally set as a jury trial, Plaintiffs stipulated that their damages, exclusive of penalties and attorney fees, did not exceed $50,000.00. As a result, the matter proceeded as a bench trial. By judgment dated July 8, 2011, the trial court rendered judgment in favor of Plaintiffs and against State Farm finding that Rita caused the rafter separation in Plaintiffs' attic, thus making State Farm liable for the expense of repair of that damage. The trial court further determined that State Farm had violated La.R.S. 22:1892 by failing to pay Plaintiffs' claim within thirty days of receiving satisfactory proof of loss. Plaintiffs were awarded $54,137.49 in damages along with $27,068.75 in penalties, $25,000.00 in attorney fees, and all costs associated with the proceeding. An amended judgment was signed on July 14, 2011, reducing the damage award to $50,000.00 and the penalty award to $25,000.00 to conform to the parties' prior stipulation regarding the extent of Plaintiffs' damages.

State Farm now appeals, asserting that the trial court erred: 1) in relying on the non-scientific testimony of a homebuilder regarding causation; 2) in relying on the estimate prepared by Cost Control Services (CCS) as a measure of damages; 3) in awarding damages for property damage that had already been paid; 4) in failing to reduce any award for property damage by the amounts that had already been paid; and 5) in awarding penalties. Plaintiffs answer the appeal, claiming that the judgment should be modified to award them damages for inconvenience and

2

mental anguish. They also seek an increase in attorney fees to compensate them

for the additional expense incurred in defending and answering this appeal.

## DISCUSSION

It is well settled that a court of appeal may not set aside a trial court's . . . finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. . . . The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court . . . findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. . . .

When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted). "[T]he ultimate

finder of fact is the judge or jury, [and] the record as a whole must furnish some

rational basis for the decision of the factfinder." *McCray v. Abraham*, 550 So.2d

244, 247 (La.App. 4 Cir. 1989). "An appellate court can only reverse a fact

finder's determinations when: (1) it finds from the record that a reasonable factual

basis does not exist for the findings of the trial court, and (2) it further determines

that the record establishes the findings are manifestly erroneous." *De La Cruz v.*

*Riley*, 04-607, p. 3 (La.App. 4 Cir. 2/2/05), 895 So.2d 589, 592, *writ denied*, 05-

513 (La. 4/22/05), 899 So.2d 581 (citing *Stobart v. State through Dep't of Transp.*

*and Dev.*, 617 So.2d 880, 883 (La.1993)).

## State Farm's Appeal

### I. Causation

In rendering judgment in favor of Plaintiffs, the trial court determined that:

> [T]he rafter separation was caused by hurricane force winds associated with Hurricane Rita in 2005. This is based primarily on the testimony of the builder Jason Mallett. It appears logical to the court that the wind also caused the various cracks in the brick veneer around the home and garage. The shifting of the home caused by the separation of the boards in the attic area led to the stress fractures in the dry wall in the various rooms of the house.

Jason Mallett was the contractor who built Plaintiffs' home.[3] According to the testimony of Mrs. Montgomery, she contacted Mr. Mallett after another contractor whom she had consulted about doing a renovation project informed her that there was damage to the home's rafters that he had seen while touring the attic. Mr. Mallett agreed to inspect the rafters and to give his opinion regarding the rafter separation and sheetrock damage that Plaintiffs sought to attribute to Rita and its aftermath. Mr. Mallett testified that there was separation between the center beam and the rafters that tied into it to support the roof as could be seen in several of the photographs in Plaintiffs' Exhibit 9. He explained that the center beam was important to the strength and overall integrity of the home's structure. He testified that there was no separation in the rafters at the time he built the house and that the city building inspectors would not have allowed the home to pass inspection if such separation had existed because it would not have been in compliance with the building code.

Plaintiffs also offered the testimony of engineer, Charles Norman, regarding causation. According to his April 2009 report,[4] Mr. Norman inspected the home in March of 2007 and again in March and April of 2009. Mr. Norman testified that

---

[3] Mr. Mallett built the home for the Perkins family who later sold it to Plaintiffs.

[4] Mr. Norman's April 20, 2009 report was accepted into evidence as Plaintiffs' Exhibit 16.

Plaintiffs' chimney was blown off as a result of the wind and wind-driven water from Rita. In his March 2007 report,[5] Mr. Norman stated that the upper roof frame was "severely damaged"; he estimated that "45 to 50% of the upper roof frame and roof to wall connections were weakened by destructive wind forces." He opined that the "magnitude of the loads from the wind forces and moments was sufficient to cause damage to the shingle roof, rafters, gutters, and roof to wall connections" and that "[s]everal rafters remain separated and several wood support members are bowed." Mr. Norman testified that the home would continue to have worsening cosmetic damages until the structural integrity of the attic frame was properly restored.

State Farm complains that Mr. Mallett was not qualified "to render any scientific opinion as to causation" and that Plaintiffs had not sought to qualify him as an expert witness. It further complains that Mr. Mallett did not offer an opinion as to the cause of the rafter separation. With regard to Mr. Norman, State Farm suggests that all of his opinions were rendered unreliable and irrelevant because Mr. Norman admitted on the witness stand that the wind speed that he had used to make some of his calculations was not accurate.

Plaintiffs posit that the trial court likely found Mr. Mallett's testimony credible and believable because he was not a retained expert, but rather, someone with the unique perspective of having seen the home's attic both before and after Rita. They also submit that the trial court was not required to disregard the entirety of Mr. Norman's expert opinions simply because he acknowledged that he had made some errors regarding the actual speed of the winds that affected Plaintiffs' home during Rita. They point out that despite his admitted mistake, Mr. Norman

---

[5] Mr. Norman's March 23, 2007 report was accepted into evidence as Plaintiffs' Exhibit 12.

stood by his conclusion that the damage to Plaintiffs' home noted in his reports was caused by Rita. Finally, Plaintiffs note that Craig Rogers, State Farm's expert engineer, attributed sheetrock damage in the home related to Rita.[6]

"Causation is a question of fact and is subject to the manifest error standard of review." *Henderson v. Gregory*, 47,086, p. 3 (La.App. 2 Cir. 6/20/12), 93 So.3d 818, 820 (citing *Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So.2d 838).

> Generally, a witness not testifying as an expert may not give testimony in the form of opinions or inferences. However, the rule is subject to the limited exception of La. C.E. art. 701 which provides that a lay witness may provide testimony in the form of opinions or inferences where those opinions or inferences are rationally based upon the perception of the witness and helpful to a clear understanding of his testimony or determination of a fact at issue.

*Merrells v. State Farm Mut. Auto. Ins. Co.*, 33,404, p. 2 (La.App. 2 Cir. 6/21/00), 764 So.2d 1182, 1183-84. In addition, "[t]estimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact." La.Code Evid. art. 704.

After considering the entirety of the testimony and evidence, we find no error in the trial court's acceptance of Mr. Mallett's lay opinion regarding the separation of the rafters in Plaintiffs' attic as his testimony regarding the condition of the rafters both before and after Rita was helpful in the trial court's determination of causation. Likewise, to the extent the trial court relied on Mr. Norman's testimony and/or report in finding that Plaintiffs had met their burden of proving that Rita caused additional damage to their home, we find no error in such reliance. Mr. Rogers, State Farm's engineer, testified that it would be improper to base a determination of damages on wind speed alone. As a result, we find no error in the trial court's reliance on Mr. Norman's testimony despite the admitted errors in his wind calculations. In our opinion, State Farm's complaints

---

[6]Mr. Rogers' July 6, 2009 report was accepted into evidence as Defendant's Exhibit 26.

6

and criticism of the testimonies of Mr. Mallett and Mr. Norman were appropriate for cross-examination of those witnesses as those complaints and criticism more appropriately "go[] to the weight, rather than admissibility, of the evidence." *Merrells*, 764 So.2d. at 1185. Ultimately, the trial court had the job of evaluating the credibility of Mr. Mallett and Mr. Norman, and it was free to accept or reject their testimonies in whole or in part. With regard to Mr. Norman, the trial court asked him a number of questions concerning the issue of causation. Moreover, the record, when read in its entirety, furnishes a rational basis for the trial court's determination that Plaintiffs proved causation. State Farm's first assignment of error lacks merit.

## II. *Damages*

State Farm's next contention is that the trial court erred in relying on the estimate prepared by CCS as a measure of damages, where the estimate admittedly contained numerous errors, including rooms that did not exist and repairs for items that were not damaged. Plaintiffs readily admit that the damage estimates prepared by Kermith Sonnier of CCS "contained a number of confusing and even erroneous calculations." Nevertheless, they contend that the trial court had enough information, from their testimony and the testimonies of the witnesses that they presented at trial, together with the exhibits filed, to make its own determination of the proper scope of damages. Thereafter, the trial court was able to make its damage award by using the costs found in Mr. Sonnier's CCS estimate. Plaintiffs point out that while State Farm strenuously challenged the scope of Plaintiffs' damages, it failed to offer any actual cost data to contradict that contained in the CCS report.

"Appellate review of awards for damages is limited to determining whether the trier of fact abused its much discretion." *Hardy v. Poydras Props.*, 97-2547, p.

6 (La.App. 4 Cir. 1/13/99), 737 So.2d 793, 798, *writs denied*, 99-764, 99-769 (La. 5/7/99), 740 So.2d 1285, 1293.

State Farm's proposition that the CCS should have been totally disregarded is not supported by the facts of this matter. True, the final CCS estimate contained errors even after having been revised two times. While this made the assessment of damages more difficult, we believe that the trial court did an excellent job of determining the supplemental damages caused to Plaintiffs' home and the actual cost of those damages from the somewhat unreliable and duplicitous CCS estimate. As evidenced by its reasons for judgment, the trial court culled from its damage award an amount sought for blown insulation as Plaintiffs did not have that type of insulation before Rita struck. After considering the testimony and evidence, we find no abuse of discretion in the amount of damages awarded to Plaintiffs. State Farm's second assignment of error has no merit.

III. ***Did Cost of Plaintiffs' Needed Repairs Exceed Amounts Already Paid?***

State Farm contends that Plaintiffs failed to provide "any evidence that the ***true cost*** of repairing only damage caused by Hurricane Rita exceeded the more than $15,000 they had already been paid by State Farm on this claim." (Emphasis added.) It argues that because Plaintiffs either failed to make the repairs included in their initial claim or completed those repairs themselves, Plaintiffs should have been required to prove that the amount it previously paid them for their initial claim was insufficient for them to complete the repairs included in their supplemental claim. In other words, State Farm argues that if Plaintiffs did not spend the amounts already paid, any leftover amount should be credited to or offset against their supplemental claim. Citing *Lambert v. Allstate Insurance Co.*, 195 So.2d 698, 700 (La.App. 1 Cir. 1967), State Farm contends that "[a] claimant seeking recovery for services performed himself in the repair of his property must

support such claim by testimony reflecting the number of hours worked and the monetary value thereof." Plaintiffs counter that the law does not provide for any such credit or offset and that the intent of State Farm's argument is to suggest that Plaintiffs are dishonest and that they filed their supplemental claim to seek improper financial gain.

Whether Plaintiffs chose not to complete the repairs included in their original claim themselves or to complete those repairs themselves is totally irrelevant to whether State Farm is owed a credit or offset with regard to their supplemental claim. *Lambert* is factually distinguishable from this matter and does not stand for the proposition that Plaintiffs should be penalized for performing some of the repairs noted in their original claim themselves or that State Farm is due a credit for the amounts it paid to adjust Plaintiffs' original claim. State Farm's third assignment of error is without merit.

### IV.    *Was State Farm Denied a Credit for Amounts Previously Paid?*

State Farm next claims that the trial court erred in failing to reduce Plaintiffs' damage award by the amounts it had already paid them. While Plaintiffs acknowledge that State Farm did make two payments to them in the total amount of $16,434.00, the majority of which was paid in reference to their original claim, they dispute State Farm's claim that it was somehow denied a credit for its previous payments.

"The judgment of the trial court is presumed correct, absent any evidence in the record which would indicate to the contrary." *Steinhoff v. Steinhoff*, 03-24, p. 5 (La.App. 3 Cir. 4/30/03), 843 So.2d 1290, 1294. Moreover, appellate courts generally will not consider issues that were not addressed by the trial court and which are raised for the first time on appeal. *Mendoza v. Grey Wolf Drilling Co.,*

*LP.*, 46,438 (La.App. 2 Cir. 6/22/11), 77 So.3d 18, *writ denied*, 11-1918 (La. 11/14/11), 75 So.3d 943..

State Farm's arguments in support of its having been denied a credit are conclusory and without support from the record or from the jurisprudence. In addition, State Farm did not present the argument that it was wrongly denied a credit to the trial court before asserting said error on appeal. The trial court was well aware that the claim before it was for supplemental amounts not previously paid by State Farm. We refuse to assume that it committed the error complained of by State Farm in the absence of a scintilla of evidence to support such a claim. State Farm's fourth assignment of error lacks merit.

### V. Penalties and Attorney Fees

In its written reasons and judgment, the trial court found State Farm liable for penalties and attorney fees under La.R.S. 22:1892 based on its conclusion that "State Farm did not pay a portion of the claim even after it was informed by its own engineer that some of the damage claimed was caused by Hurricane Rita and its aftermath." During the course of the trial, the trial court stated on the record that it believed that the reports State Farm got from its own engineer constituted satisfactory proof of loss because it related some of Plaintiffs' losses to Rita.[7]

State Farm contends that the award of penalties and attorney fees should be reversed because Plaintiffs failed to prove that any of its actions were performed in bad faith. To the contrary, State Farm claims that the evidence showed that there was a legitimate and reasonable dispute as to the cause and extent of damages to Plaintiffs' home, thus precluding a finding that it acted arbitrarily and capriciously.

---

[7] The Rimkus Consulting Group issued two reports in this matter. The first report, dated July 17, 2007, is contained in State Farm's claims file which was accepted into evidence as Plaintiffs' Exhibit 2, in globo. The second report, dated July 6, 2009, was accepted into evidence as Defendant's Exhibit 26.

Plaintiffs counter that the trial court was correct in determining that State Farm was liable to them for penalties and attorney fees for failing to properly pay their supplemental claim after having been provided with information sufficient to fully apprise it of their claims. Plaintiffs submit that after receiving notice of their claimed supplemental losses, State Farm hired its own engineer to inspect their property and, upon receiving an opinion that differed from that of Plaintiffs' engineer, chose to deny all of their supplemental claims rather than to fulfill its statutory obligations of good faith and fair dealing. Plaintiffs point out that State Farm failed to call a claims adjuster or company representative to explain its handling of their supplemental claim.

"Louisiana jurisprudence holds that an insurer's duty of good faith and fair dealing is a continuing tort, and continues until the insurer complies with its duty." *J.R.A. Inc. v. Essex Ins. Co.,* 10-797, p. 38 (La.App. 4 Cir. 5/27/11), 72 So.3d 862, 884. "Statutes authorizing the imposition of a penalty are to be strictly construed." *Starr v. Brou*, 08-612, p. 8 (La.App. 5 Cir. 1/27/09), 8 So.3d 674, 680. "'[S]atisfactory proof of loss' is only that which is 'sufficient to fully apprise the insurer of the insured's claims.'" *La. Bag Co., Inc. v. Audubon Indem. Co.*, 08-453, p. 23 (La. 12/2/08), 999 So.2d 1104, 1119 (quoting *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La.1985)). "Whether or not a refusal to pay [a claim] is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. . . . Because the question is essentially a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error." *Reed v. State Farm Mut. Auto. Ins. Co.*, 03-107, p. 14 (La. 10/21/03), 857 So.2d 1012, 1021 (citation omitted).

In this case, the evidence revealed that after providing Plaintiffs with a payment of $585.28 in March of 2007, to compensate them for additional damages

11

that had recently been discovered as being attributable to Hurricane Rita, State Farm failed to make any additional payments to them. Instead, it hired its own experts to challenge the experts hired by Plaintiffs. Thereafter, upon finding flaws in the CCS estimate, it denied the remainder of Plaintiffs' claims in their entirety, despite the fact that its own engineering expert found sheetrock damage that he attributed to Rita.[8] Gerald Gaubert, the State Farm employee assigned to handle Plaintiffs' file, testified that State Farm did not perform any further loss adjustment analysis after making its final payment to Plaintiffs in March of 2007. By adopting such a defensive stance in this matter, State Farm acted at its own peril and subjected itself to being liable for statutory penalties and attorney fees in the event that its actions were later determined to be arbitrary and capricious. After examining the record in its entirety, we are convinced that while State Farm timely began an investigation of the Plaintiffs' supplemental loss and timely made a partial tender, it utterly failed to complete that investigation and to timely adjust the remainder of Plaintiffs' losses. *See Clark v. McNabb*, 04-5 (La.App. 3 Cir. 5/19/04), 878 So.2d 677. Moreover, the fact that State Farm timely paid Plaintiffs' original Hurricane Rita claim and a portion of supplemental claim in March 2007 does not insulate it from being held liable for violating the mandatory obligations found in La.R.S. 22:1892 with regard to its overall handling of Plaintiffs' supplemental claim. The trial court did not manifestly err in finding that State Farm was liable for penalties and attorney fees pursuant to La.R.S. 22:1892. This assignment of error lacks merit.

---

[8] At trial, Mr. Rogers testified that he attributed the sheetrock damage to Rita because he assumed that the cracks had appeared within several months of the storm, but that he would not have done so had if Plaintiffs had noticed the cracks much later. Thereafter, the trial court noted that it was ludicrous for Mr. Rogers to have not asked Plaintiffs about when the cracks appeared when he did his inspection and then to contradict his opinion regarding causation.

12

## Plaintiffs' Answer to Appeal

### I. Mental Anguish/Inconvenience Damages

Plaintiffs contend that the trial court erred in failing to award them general damages under La.R.S. 22:1973 to compensate them for the inconvenience and mental distress that they suffered in conjunction with the submission of the supplemental claim. They contend that an award of $7,500.00 to each of them would adequately compensate them for their damages in this regard.

State Farm denies that Plaintiffs suffered any mental anguish as a result of its handling of their claim. In the alternative, it submits that even if this court were to find that Plaintiffs did suffer any such damages, no additional damages should be awarded because Plaintiffs stipulated that their damages, exclusive of penalties and attorney fees, did not exceed $50,000.00.

State Farm is correct that since Plaintiffs were awarded $50,000.00 in damages by the trial court, they are not entitled to an additional award of general damages that they might otherwise be entitled to receive. As a result, we need not determine whether the trial court erred in failing to award them mental anguish damages.

### II. Additional Attorney Fees

Plaintiffs contend that they should be awarded additional attorney fees for the additional work necessitated by this appeal. State Farm contends that Plaintiffs' request should be denied for the same reasons that the trial court award of penalties and attorney fees should be reversed.

"Generally, when an award for attorney's fees is granted at the trial level, additional attorney's fees are proper for work done on appeal. This is to keep the appellate judgment consistent with the underlying judgment." *Oracle 1031 Exchange, LLC v. Bourque*, 11-1133, p. 10 (La.App. 3 Cir. 2/8/12), 85 So.3d 736,

743, *writ denied*, 12-546 (La. 4/20/12), 85 So.3d 1272 (quoting *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170).

The trial court awarded Plaintiffs $25,000.00 in attorney fees. Because Plaintiffs were successful in defending the entire judgment in their favor, we award them an additional $3,000.00 in attorney fees for work done on this appeal.

## DECREE

For the foregoing reasons, the judgment rendered in favor of Galyn and James Montgomery and against State Farm Fire & Casualty Company is affirmed in its entirety. Galyn and James Montgomery are awarded additional attorney fees of $3,000.00 for the work performed on this appeal. All costs of this appeal are assessed against State Farm Fire & Casualty Company.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED TO APPELLEE.**