# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2020

Lyle W. Cayce
Clerk

No. 19-31030

Coastal Bridge Company, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Heatec, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:18-CV-422

Before Graves, Costa, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Coastal Bridge Company, L.L.C. ("Coastal Bridge") appeals the dismissal of its negligence action brought against Heatec, Inc. ("Heatec"). Concluding that the district court improperly granted sanctions for spoliation of evidence against Coastal Bridge and overlooked genuine issues of material

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

fact in entering summary judgment for Heatec, we reverse and remand for further proceedings.

I.

A fire involving an industrial Heatec heater occurred at Coastal Bridge's asphalt plant. The morning of the fire, a power surge knocked the heater offline. Coastal Bridge reset the breaker and replaced two blown fuses. While attempting to restart the heater, Coastal Bridge received a low media differential pressure reading on the control panel indicating that thermal oil was not flowing properly.

In response to the alarm, Coastal Bridge's foreman and heater operator, Nathan Brossett ("Brossett"), called Heatec's customer service department for help troubleshooting the problem. The fire started while Brossett was on the phone with Larry Weldon ("Weldon"), a Heatec service technician. During the course of the telephone conversation, Weldon made certain inquiries concerning the nature of the problems that Coastal Bridge was having with the heater. Brossett related to Weldon what had occurred that morning, including the power surge. Weldon instructed Brossett to operate one of the heater's purge valves, and while Brossett was on the phone with Weldon and operating the valve as instructed, a fire started that engulfed the heater and surrounding area. Brossett and three co-workers saw the fire originate, but were unharmed.

After the fire, Coastal Bridge conducted a preliminary inspection of the area where the fire occurred to obtain background information for insurance adjustment purposes. That same day, Coastal Bridge's risk manager and safety director recorded audio statements from the four employees present at the scene where the fire occurred.

Two days after the fire, Coastal Bridge's expert witness, engineer Andrew Lynch ("Lynch"), arrived at the plant to investigate the fire,

examine the scene, and interview the employees. The fire shut down the entire plant, and in an effort to mitigate damages, Coastal Bridge ordered a temporary heater. Lynch recommended that the entire heater skid be removed from the plant's piping system and set aside for a subsequent joint inspection with Heatec. The damaged heater was moved until the joint inspection with Heatec.

Heatec had immediate notice of the fire while on the phone with Coastal Bridge, and was given formal notice of the fire one month later. After receiving the formal notice, Heatec's counsel called to discuss the fire and make arrangements for the joint inspection to occur three weeks later. Counsel for Heatec, Heatec's cause-of-origin expert, and other representatives attended the joint inspection at the plant. They tested, photographed, and inspected the heater.

Coastal Bridge filed a negligence case against Heatec seeking recovery of damages related to the fire in March 2018, alleging that the Heatec service technician's troubleshooting advice caused the fire. After completion of discovery, Heatec filed a *Daubert* motion to exclude Lynch (Coastal Bridge's expert), a motion for summary judgment, and a motion for sanctions for spoliation of evidence.

The district court held a hearing on the motions and issued an oral ruling deciding all three motions from the bench. The court dismissed all of Coastal Bridge's claims with prejudice. In doing so, it granted Heatec's summary-judgment motion and its motion for sanctions for spoliation of evidence, and it granted in part Heatec's motion to exclude Coastal Bridge's expert.[1] The next day, the court entered a two-page final judgment giving limited insight into its findings. Coastal Bridge timely filed an appeal, arguing

---

[1] Coastal Bridge does not challenge the *Daubert* motion on appeal.

that the district court erred by ignoring genuine issues of material fact in Heatec's motion for summary judgment and erred in granting Heatec's motion for sanctions for spoliation of evidence.

## II.

In its motion for summary judgment, Heatec argues it is entitled to summary judgment for two main reasons: First, that Coastal Bridge was the improper party to bring suit, and that the "real party in interest" is the insurance company. And second, that Coastal Bridge cannot establish the essential elements of its negligence claim. The district court granted summary judgment because it found: (1) Coastal Bridge spoliated evidence by delaying notification of Heatec of the fire, which deprived Heatec of an opportunity to inspect the scene and the heater and, thus, of an opportunity to present a defense; (2) Coastal Bridge failed to carry its burden of showing causation because it didn't eliminate other potential causes; and (3) the Heatec service tech acted within the scope of his duty — i.e., he had a duty of reasonable care and satisfied that duty because causing a fire was not reasonably foreseeable to him.

On appeal, Coastal Bridge argues that the district court ignored evidence in the record that directly contradicts its basis for granting the motion for summary judgment. Specifically, the district court ignored disputed issues of material facts involving: (1) whether the pipes moved during the phone call with the technician and where the fire escaped; (2) whether Coastal Bridge spoliated evidence; (3) whether Coastal Bridge could prove fire causation; and (4) whether Heatec breached its duty of reasonable care in troubleshooting the heater.

In response, Heatec argues the district court's decision should be affirmed. Heatec notes that Coastal Bridge leaves the *Daubert* decision untouched. Heatec acknowledges that the *Daubert* ruling eliminated Lynch as an expert on "servicing of heaters," but fails to acknowledge that the court

upheld him as an expert "regarding fire cause and origin within the heater system itself." This distinction is significant. Further, Heatec argues that because the heater's pumps were replaced prior to the inspection, it was prejudiced and "deprived of the opportunity to even examine the very parts of the heater Coastal Bridge claims played a role in the fire."

We review the motion for summary judgment de novo, and we apply the same standard as the district court, viewing the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Continental Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Courts do not disfavor summary judgment, but, rather, look upon it as an important process through which parties can obtain a "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is properly entered when the "depositions, documents, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c)(1)(A); *see also Celotex*, 477 U.S. at 322.

## A.

Heatec argues that Coastal Bridge cannot establish the essential elements of its negligence claim.[2] Pursuant to Louisiana Civil Code article

---

[2] Heatec also asserted in its summary judgment motion that because Coastal Bridge has been compensated by its insurance company, its negligence claim should be dismissed as an improper party to the suit. This issue was not addressed by the district court, nor has it been raised on appeal. Coastal Bridge presented evidence that it had not been fully compensated in the form of a sworn statement in proof of loss. An insurer who pays a part of the loss is only partially subrogated to the rights of the insured. *See United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 381 (1949). When an insurer has paid part of the loss and is only partly subrogated to the rights of the insured, the respective rights of the parties

2315, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." To prove negligence under Louisiana law, a plaintiff must show: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Lemann v. Essen Lange Daiquiris, Inc.*, 2005–1095 (La. 3/10/06); 923 So.2d 627.

Literally interpreted, a tortfeasor may be held liable under Article 2315 for any damage remotely caused by his or her fault. *Severn Place Assocs. v. Am. Bldg. Servs., Inc.*, 05-859 (La. App. 5 Cir. 4/11/06); 930 So.2d 125, 127. However, "[a]s a matter of policy, the courts, under the scope of duty element of the duty-risk analysis, have established limitations on the extent of damages for which a tortfeasor is liable." *Id.* (citations omitted).

Under Louisiana law, determining the scope of a duty is "ultimately a question of policy as to whether the particular risk falls within the scope of the duty." *Roberts v. Benoit*, 605 So.2d 1032, 1044 (La. 1991). There "must be an 'ease of association' between the rule of conduct, the risk of injury, and the loss sought to be recovered." *Severn*, 930 So.2d at 127 (citation omitted). That inquiry typically requires consideration of the facts of each case;

---

parallel those when there has been a partial assignment. *Greenhill Petroleum Corp. v. Mike Hicks Tools & Serv., Inc.*, No. CIV. A. 92-3938, 1994 WL 495797, at *2 (E.D. La. Sept. 6, 1994). Either the insured or the insurer may sue. *Id.* An insurance company, as a partial subrogee, need not be joined in an action by the insured, even if the alleged tortfeasor requests joinder. *Dudley v. Smith*, 504 F.2d 979, 983 (5th Cir. 1974). Moreover, Coastal Bridge expressly consented to and authorized XL Specialty to sue in its name pursuant to a Subrogation Receipt. As a result, though not argued on appeal, we find this argument is without merit.

therefore, "[a]lthough duty is a question of law, Louisiana courts do not grant summary judgment on the issue of duty where factual disputes exist or where credibility determinations are required." *Bass v. Superior Energy Servs., Inc.*, No. 13-5175, 2015 WL 460378, at *10 (E.D. La. Feb. 3, 2015) (citing *Parish v. L.M. Daigle Oil Co., Inc.*, 98-1716 (La. App. 3 Cir. 6/23/99); 742 So.2d 18, 10–11 (Summary judgment is proper only where no duty exists as a matter of law and no factual or credibility disputes exist); *Coates v. Nettles*, 563 So. 2d 1257, 1259 (La. App. 1st Cir. 1990) (Where there is no factual dispute which exists and no credibility determination required, the question of the existence of a duty is a legal question within the province of the trial judge).

It is not the court's function on a motion for summary judgment to resolve any genuine issue of material fact or make determinations as to the credibility of witnesses, but instead the court must consider the facts presented and resolve all doubts in the light most favorable to the non-moving party. *See Williams v. Shell Oil Company*, 677 F.2d 506, 509 (5th Cir. 1982). The court has no duty to try or decide factual issues; its only duty is to determine whether or not there is an issue of fact to be tried. *Chappell v. Goltsman*, 186 F.2d 215 (5th Cir. 1950). In passing on such a motion, the court should not assess the probative value of any of the evidence. *Gross v. Southern Railroad Co.,* 414 F.2d 292, (5th Cir. 1968). If there is a genuine issue of material fact which would cause a dispute to reasonably be resolved in favor of the party resisting the summary judgment, the summary judgment cannot stand. *National Hygienics, Inc. v. Southern Farm Bureau Life Insurance Company*, 707 F.2d 183, 186 (5th Cir. 1983). Because this case presents multiple genuine issues of material fact, summary judgment was improvidently granted.

## B.

Coastal Bridge's claim for negligence against Heatec stems from the phone call between Brossett and Weldon, when Coastal Bridge called

Heatec's customer service department for help troubleshooting a problematic heater after the power went out and the two fuses in the control panel blew. During the course of that telephone conversation, Weldon made certain inquiries concerning the nature of the problems that Coastal Bridge was having with the heater. Coastal Bridge alleges that the fire occurred because the issue was misdiagnosed by Weldon, after he negligently failed to inquire further about electrical issues after the power outage. Heatec asserts that Coastal Bridge cannot show that Weldon breached any duty, nor can it show that the alleged breach caused the fire.

Under a Louisiana law negligence cause of action, the breach and causation elements require factual determinations. *Cornelius v. Wal-Mart Stores, Inc.*, 2000-121 (La. App. 3 Cir. 10/25/00), 772 So.2d 816, 819 (Whether negligence defendant has breached a duty is a question of fact); *Montgomery v. State Farm Fire & Cas. Co.*, 2012-320 (La. App. 3 Cir. 11/14/12), 103 So.3d 1222, 1227 (Causation is a question of fact).

The first element has been satisfied. It is undisputed that Heatec's service technician owed Coastal Bridge a duty to exercise reasonable care in instructing Brossett over the phone. Coastal Bridge argues Weldon owed a heightened duty of care because of the risk of serious injury to Coastal Bridge employees and property from improper instructions concerning the industrial heater. Although expert testimony may be helpful in determining whether special circumstances justify imposing a heightened duty of care on Weldon, the court ultimately bears responsibility for deciding whether such a duty exists. We do not find a *heightened* duty of care owed here.

Next, we examine whether Weldon's conduct failed to conform to the appropriate standard imposed, breaching his duty of reasonable care owed to Coastal Bridge. What constitutes reasonable care depends on the degree of the likelihood and seriousness of injury compared to the cost of prevention.

*Brooks v. Henson Fashion Floors, Inc.*, 26,378 (La. App. 2 Cir. 12/7/94), 647 So.2d 440, 443. Heatec asserts that Weldon exercised reasonable care in his instructions to Brossett.[3] Coastal Bridge argues that Heatec breached its duty of care by not properly assessing the status of the heater's electrical safety systems and burner prior to giving instructions to change the heater's valve configuration, despite being told that there was a power surge at the plant earlier that morning.

On March 28, 2017, nearly two years after the fire, Brossett and Weldon testified to the circumstances leading up to the fire. When Brossett called Weldon, he relayed what had happened that morning involving the power surge, that the heater showed no differential pressure, and that the heater was, at that point, in purge mode. According to Weldon, the phone call lasted five to ten minutes. After the alarm message indicated low media differential pressure, the testimony materially differs as to what instructions were given by Weldon to Brossett.

Brossett testified that he was told to "open the valve…and flood the pump with oil." Weldon testified he asked Brossett the standard questions and gave him instructions to "throttle down" on the return valve going back to the expansion tank. Heatec's corporate representative also testified, stating that "[Heatec's] had issues with power surges…and they'll mess up the electrical." Heatec was aware that power surges at asphalt plants could damage a heater's electrical components, including pressure switches.

---

[3] Heatec asserts that Coastal Bridge personnel did not fault Heatec for the fire, and in support of this assertion, Heatec cites various deposition excerpts, only one of which can substantiate this claim. Brossett stated he didn't "know what happened," after being asked if he could pinpoint anything that Heatec did to cause the fire. Daniel Leger testified that he didn't know of anyone blaming Heatec for the fire. Jeremy Lacombe stated "I do not know" when asked if he knew any facts or information that would suggest that Heatec was responsible for the fire.

Further, Weldon testified that had he diagnosed the problem as electrical, "he would have asked a bunch of questions." But according to Coastal Bridge, Weldon disregarded any potential electrical issues with the heater that may have resulted from the earlier power surge, and instead focused exclusively on the low media differential pressure reading.

The evidence here includes conflicting testimony, resolution of which requires the evaluation of credibility. In evaluating credibility when confronted with conflicting testimony, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. We find this conflicting testimony adequate to raise issues of fact regarding whether Weldon had breached the duty of reasonable care and the possible negligence in his instructions during the call.

Turning to the issue of causation, in the context of fire cases, origin and cause may be proven by direct and circumstantial evidence. *Westridge v. Poydras Properties*, 598 So.2d 586, 590 (La. App. 4th Cir. 1992). Plaintiffs need not negate all other possible causes. *Id.* Proof that excludes other reasonable hypothesis of cause with a fair amount of certainty so that it is more probable than not that the fire was caused in a particular manner or scenario is enough to establish liability. *Id.*

In its motion, Heatec argues that Coastal Bridge cannot show how Weldon's instructions caused the fire and the only explanation for the fire comes from Coastal Bridge's expert, Lynch. Heatec cites the deposition of Todd Schexnayder – Coastal Bridge's Health, Safety, and Environmental Director – to support the assertion that Lynch was unable to determine the fire's cause. This assertion is not supported by the cited deposition excerpts, nor is it supported by the record. Lynch did make a finding as to the fire's origins. In his report, Lynch prepared an analysis for the origins of the fire and determined the electrical system was not functioning properly and that

the fire originated near the coil inlet valve No. 4 on the Heatec heater. Further, the district court held in its *Daubert* ruling that Lynch was "qualified to offer opinions regarding fire cause and origin within the heater system itself."

The next issue still in dispute is the relevance of the heating pumps. According to Heatec, "[the pumps] are critical because prior incidents involving heaters have indicated that poor pump maintenance can be a cause of a heater fire." Coastal Bridge argues that because Heatec had not asked to see the pumps at the joint inspection, no search was conducted to locate them. Coastal Bridge further asserts that Heatec has not articulated any reason for the pumps' relevance, nor did Heatec demonstrate a nexus between the electric pump and the fire's origins (on opposite ends of the piece of equipment). This topic was revisited during oral argument, and Heatec's counsel conceded that while Heatec representatives reviewed the evidence available at the joint inspection, they did not specifically ask to inspect the pumps, and it is unclear whether or not the pumps were present at the joint inspection.

A factual dispute also remains to the disassembly or disposal of equipment. During oral argument, Heatec argued that the heater had been taken apart before the inspection and parts had been discarded. Coastal Bridge's response, citing the testimony of its expert witness, was that Lynch opened an end cap to photograph the interior of the heater, reinstalled the end cap, and performed a visual inspection of the burner.

Next, the parties disagree as to the origin of the fire or whether the inlet pipe moved. Heatec argues that Coastal Bridge could not demonstrate its version of the events. Four eyewitness reports from Coastal Bridge employees state that the fire started at coil inlet valve No. 4 and chamber inlet piping, and Lynch corroborated the eyewitness accounts with burn patterns

in that area. Heatec asserts that "there's no evidence that the inlet pipe moved at all" and that the heater's inlet pipe is bolted in place from the inside of the farm tank. But Coastal Bridge cites to the directly contrary eyewitness testimony of Brossett, who Coastal Bridge asserts saw the inlet pipe moving in and out of the burner chamber at the time that he was following the instructions of Heatec to operate the No. 2 purge valve.

Lastly, during oral argument, Heatec stated that it had no communication about the fire with representatives from Coastal Bridge until it received the formal notice, apart from a request for a replacement heater. Coastal Bridge disagreed, and challenged this assertion during its oral argument rebuttal with information that more communication had occurred. Specifically, Coastal Bridge's insurance adjuster was in communication with the insurance adjuster for Heatec to discuss a joint inspection and circulate protocol for such an inspection. Further, Weldon testified that he called Brossett back after the fire, had Brossett text him a photo of the fire, and that Heatec would have a salesman sent out to the plant.

Clearly, genuine issues of material fact exist as to: (1) the significance of the heating pumps; (2) what equipment was disassembled and disposed of; (3) the origin of the subject fire and whether the inlet pipe moved; and (4) the extent of communication[4] that occurred between the parties before the formal notice of the fire. These factual issues cannot be resolved without weighing the evidence and making credibility determinations, which are matters for the factfinder. The error here is structural, in that the jury, not the court, should have determined the issue of liability, contingent as it is upon resolution of the conflicting testimony and credibility determinations.

---

[4] The issue of communication after the fire is relevant to the court's consideration of spoliation, a plank upon which the district court rested its grant of summary judgment.

No. 19-31030

In view of these unresolved issues of material fact, the trial court erred in granting summary judgment in favor of Heatec.

## III.

The next issue before the court is spoliation of evidence. The district court found spoliation as a factor in granting the motion for summary judgment, and granted the defense motion for sanctions based on spoliation. We review the spoliation as the basis for granting the motion for summary judgment de novo, but a trial court's decision on a motion for sanctions for spoliation is reviewed for abuse of discretion. *See Guzman v. Jones*, 804 F.3d 707 (5th Cir. 2015). This court permits an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of "bad faith" or "bad conduct." *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005).

## A.

Although Heatec separately filed a motion for sanctions for spoliation of evidence, the district court addressed the issue of spoliation within the context of its reasons for granting summary judgment. Coastal Bridge argues that the law and evidence do not support an award of sanctions because the district court erred in finding bad faith on the part of Coastal Bridge, and that Heatec did not establish that the allegedly spoliated evidence is relevant to its defenses nor that it has been prejudiced. Coastal Bridge disputes that the missing pumps were material, citing that Heatec allegedly didn't complain about the absence when it performed its inspection. Coastal Bridge argues Heatec failed to follow the suggested due diligence of its own expert "to investigate the cause and origin of the fire and did not request the opportunity to conduct additional testing."

Further, Coastal Bridge argues that "Heatec fails to cite any legal authority to support its argument that Coastal Bridge was obligated to leave

No. 19-31030

the fire scene untouched and incur business interruption losses instead of mitigating its damages pending the joint inspection of the damaged Heater." Heatec's argument is contrary to the duty imposed upon a damaged property owner to mitigate its damages or otherwise risk recovery from its underwriters or against a liable party. Affirmation of the district court's final judgment, Coastal Bridge argues, would have far-reaching consequences relative to how a damaged property owner responds to causalities and how initial recovery and mitigation efforts are treated by the district courts.

In response, Heatec argues the district court did not abuse its discretion by granting sanctions for spoliation of evidence against Coastal Bridge because the surrounding circumstances manifest bad faith, and Heatec has been prejudiced by the destruction of evidence. It asserts that the delay in getting the formal notice of the fire and being able to inspect the scene prejudiced its defenses.

## B.

The spoliation of evidence doctrine governs the intentional destruction of evidence. *Menges v. Cliffs Drilling Co.*, No. CIV. A. 99-2159, 2000 WL 765082, at *1 (E.D. La. June 12, 2000) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)). If a party *intentionally* destroys evidence, the trial court may exercise its discretion to impose sanctions on the responsible party. *Id.* (emphasis added). The seriousness of the sanctions that a court may impose depends on the consideration of:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such

No. 19-31030

conduct by others in the future. *Id.* (quoting *Schmid*, 13 F.3d 76, 78 (3d Cir. 1994)).

Here, finding spoliation of evidence, the district court noted that the defendant was not formally notified of the fire or given an opportunity to inspect the heater until a month after the fire. Coastal Bridge argues Heatec was made immediately aware of the fire, as its technician was on the phone with the Coastal Bridge employee when the fire occurred at the plant. This was further supported by Weldon's testimony that he called Brossett back after the fire, had Brossett text him a photo of the fire, and indicated that Heatec would have a salesman sent out to the plant.

Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process, if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). When evaluating allegations regarding spoliation of evidence, federal courts sitting in diversity are to apply federal evidentiary rules rather than state spoliation laws. *Condrey*, 431 F.3d at 203. A plaintiff alleging spoliation must establish that the defendant *intentionally* destroyed the evidence for the purpose of depriving opposing parties of its use. *Catoire v. Caprock Telecommunications Corp.*, No. 01–3577, 2002 WL 31729484, at *1 (E.D. La. Dec. 2, 2002) (emphasis added). It is insufficient to show that a party acted negligently, rather than intentionally, in spoliating the evidence. *Id*; *see also Garnett v. Pugh*, No. CIV. A. 14-479, 2015 WL 1245672, at *4 (E.D. La. Mar. 18, 2015).

A spoliation claim has three elements: (1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally

15

destroyed; and (3) the moving party must show that the spoliating party acted in bad faith. *Port of S. La. v. Tri-Parish Indus.*, 927 F. Supp. 2d 332, 346 (E.D. La. 2013); *see also Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 190 (5th Cir. 2018).

A party seeking the sanction of an adverse-inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598 (5th Cir. 2010).

During the hearing, the court noted that the defendant was not given an opportunity to inspect the fire scene immediately, and discussed the heater being moved. The heater remained outdoors after it was moved. The court stated it believed "the circumstances in this case indicated bad faith . . . there was a greater obligation of Coastal Bridge . . . when they are going to assert a claim for damages." During oral argument, Heatec emphasized that Coastal Bridge chose "the course of destruction and disposal." We disagree.

The first factor is whether Coastal Bridge had an obligation to preserve the damaged equipment in anticipation of litigation. Identifying the trigger for when a party should have reasonably anticipated litigation is challenging, as it varies based on the facts and circumstances. *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942 (S.D. Tex. 2010). Because Coastal Bridge reasonably should have anticipated litigation over the fire damage, it had a duty to preserve the equipment. Accordingly, the spoliation inquiry proceeds to the remaining two factors.

No. 19-31030

The second factor is whether Coastal Bridge acted with a culpable state of mind. The potential levels of culpability range from no culpability to bad faith, with intervening levels including negligence, gross negligence, and willfulness. Negligence is not enough to support the imposition of sanctions for spoliation, "for it does not sustain an inference of consciousness of a weak case." *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) ("Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case."); *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (Granting a spoliation-of-evidence sanction requires a finding of intentional destruction indicating a desire to suppress the truth). Accordingly, a party seeking sanctions is not entitled to an adverse inference instruction unless that party can show that its adversary intentionally and in bad faith disposed of the evidence.

The highest level of culpability, bad faith, is inapplicable here. Bad faith requires destruction for the purpose of depriving the adversary of the evidence. See *Condrey,* 431 F.3d at 203. The record indicates no such culpability, and the district court gives no explanation to substantiate this determination against Coastal Bridge. Adherence to normal operating procedures may counter a contention of bad faith. Here, an outdoor piece of industrial equipment was stored outdoors. The record does not support the finding that Coastal Bridge acted with a culpable state of mind.

The third and final factor in the spoliation analysis is the relevance of the spoliated evidence. It is undeniable that the damaged heater is relevant evidence for the claims in this case, but a question remains as to the relevance of the heater's missing pumps. A party suffers prejudice where it cannot present "evidence essential to its underlying claim." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010) (internal citation omitted). Heatec did not specifically request to examine the pumps at the

17

joint inspection. As such, the pumps are of questionable relevance for the purposes of its underlying claim that poor pump maintenance can be a cause of a heater fire.

Dismissal of this case and sanctions overcorrect for the damage caused by the spoliation of evidence in this matter. Dismissal is justified "only in circumstances of bad faith or other like action." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001). The record does not support a finding of bad faith. For these reasons, we find that the trial court abused its discretion by granting sanctions for spoliation.

## IV. Conclusion

For the foregoing reasons, the judgment is REVERSED and REMANDED for further proceedings.